RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2017-SC-000576-DG
## AND
## 2018-SC-000066-DG

DATE 11/25/19 JHF

COMMONWEALTH OF KENTUCKY       APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.       CASE NO. 2015-CA-001672
HENDERSON CIRCUIT COURT NO. 15-CR-00241

MICHAEL JOSEPH JAMES       APPELLEE/CROSS-APPELLANT

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

## AFFIRMING, IN PART, REVERSING, IN PART, AND REMANDING

Under KRS 524.100, a person is guilty of tampering with physical evidence if, among other things, that person conceals or removes physical evidence which that person believes is about to be produced or used in an official proceeding with the intent to impair its verity or availability in the official proceeding. We granted discretionary review to determine whether sufficient evidence of concealment or removal exists where a defendant, in the presence of an officer, drops or tosses physical evidence of a possessory crime.

We hold that there was insufficient evidence to convict Michael Joseph James of tampering with physical evidence, and we affirm the opinion of the Court of Appeals insofar as it vacated the trial court's judgment convicting James of that charge. But we reverse the opinion of the Court of Appeals

insofar as it reversed James's convictions for first-degree possession of a controlled substance and possession of drug paraphernalia and reinstate the trial court's judgment with respect to those convictions. The case is remanded to the trial court for entry of a new judgment consistent with this opinion.

## I. BACKGROUND.

Detective Jenkin of the Kentucky State Police Narcotics Unit was investigating reports of possible drug activity at a residence. Detective Jenkin, accompanied by another detective and a Kentucky State Trooper, arrived at that residence in a marked cruiser. Detective Jenkin was dressed in plain clothes but wore a vest marked "State Police." Upon the officers' arrival, Detective Jenkin saw Michael Joseph James heading toward the residence, but James appeared to change direction and go down an alley when he spotted the officers. Detective Jenkin got out of his car, identified himself as State Police, and yelled for James to stop. James looked over his shoulder and continued to walk away from Detective Jenkin while keeping his hands near his waistline.

As James walked away from the officers and ignored orders to stop and show his hands, Detective Jenkin observed several items falling from James's waistline area to the ground. Detective Jenkin could not specifically identify the items being dropped but stated that "the last and final item that I saw fall from waistline area was a black cylindrical item." Although James was walking away from Detective Jenkin at the time the items were dropped, Detective Jenkin testified that all of this occurred at about four o'clock in the afternoon daylight and that nothing impaired his vision.

Detective Jenkin drew his weapon and continued to order James to show his hands. After James finally stopped and showed his hands, he was

2

handcuffed and placed under arrest. Detective Jenkin returned to the area where he observed the items falling from James's waistline and discovered lying on the ground an empty diabetic test-strip canister, black in color. Approximately six to eight inches away from the canister, Detective Jenkin found a glass pipe containing residue of a burnt substance. KSP Laboratory testing confirmed the substance was methamphetamine. Detective Jenkin testified that he could not "say with one-hundred percent certainty [he] saw that particular glass pipe fall" and did not testify that he saw any items as large as the glass pipe being dropped. Detective Jenkin stated that there was a lot of trash in the area but claimed there was no trash in the area around James's feet where the evidence was recovered.

James is a diabetic, and he acknowledged that the black canister was his. James maintains, however, that the glass pipe containing methamphetamine was not his. James was charged with one count of first-degree possession of a controlled substance, once count of possession of drug paraphernalia, and once count of tampering with physical evidence; and the case proceeded to a jury trial in circuit court.

At the close of the Commonwealth's case, James's counsel moved for a directed verdict on all three charges, but the trial court denied the motion. James's counsel renewed the motion at the close of all the evidence, but the trial court again denied the motion. The jury convicted James of all three charges and sentenced him to two years each for the possession of a controlled substance and tampering charges and twelve months for the possession of drug paraphernalia charge, set to run concurrently for a total of two years.

3

James appealed to the Court of Appeals, which reversed the trial court's judgment and remanded the case to the trial court to enter a new judgment granting James's motion for a directed verdict on all three charges. Specifically, the Court of Appeals found there was insufficient evidence for a jury to conclude "that the glass pipe was in the dominion or control of James, even for constructive possession." Because the majority of the appellate panel found there was insufficient evidence to convict James of the possession crimes, it also found insufficient evidence to find James guilty of tampering with physical evidence.

We granted the Commonwealth's motion for discretionary review and James's cross-motion for discretionary review.

## II. ANALYSIS.

The Commonwealth argues that the trial court correctly denied James's motion for a directed verdict on the charges of first-degree possession of a controlled substance and possession of drug paraphernalia and that the Court of Appeals panel erred by reversing the trial court—an argument that James disputes. And James argues that the Court of Appeals correctly held that the trial court erred when it denied his motion for a directed verdict on the charge of tampering with physical evidence—an argument that the Commonwealth disputes. All these issues are properly preserved for our review.

When reviewing a trial court's ruling on a motion for a directed verdict, we turn to the standard outlined in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of

4

ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.[1]

On appellate review, we must determine whether, given the evidence as a whole, "it would be clearly unreasonable for a jury to find guilt[.]"[2] Only then is a defendant entitled to a directed verdict of acquittal.[3] Further, the Commonwealth need only produce more than a "mere scintilla" of evidence to defeat a defendant's motion for a directed verdict.[4]

### 1. The trial court did not err in denying James's motion for a directed verdict on the possession charges.

James argues that the Commonwealth failed to produce sufficient evidence that he possessed the glass pipe containing methamphetamine to overcome a motion for a directed verdict on the charges of first-degree possession of a controlled substance and possession of drug paraphernalia. We disagree.

KRS 218A.1415(1)(c) provides that "a person is guilty of possession of a controlled substance in the first degree when he or she knowingly or unlawfully possesses . . . [m]ethamphetamine[.]" Similarly, KRS 218A.500(1) and (2) make it unlawful for any person to possess with intent to use drug paraphernalia, which is defined in part to mean "all equipment, products and materials of any kind which are used, intended for use, or designed for use in . . . inhaling, or

---

[1] 816 S.W.2d 186, 187 (Ky. 1991).

[2] *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983)).

[3] *Id.* (citing *Sawhill*, 660 S.W.2d at 5).

[4] *Sawhill*, 660 S.W.2d at 5.

otherwise introducing into the human body a controlled substance in violation of this chapter[.]"

A defendant's conviction under these statutes may be premised on either actual or constructive possession.[5] As always, the Commonwealth may prove its case by direct or circumstantial evidence.[6] A jury may make reasonable inferences from circumstantial evidence.[7] And, while circumstantial evidence must "do more than point the finger of suspicion,"[8] a conviction can be premised on such evidence if, taking the evidence as a whole, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt.[9]

The circumstantial evidence presented at trial would allow a reasonable jury to conclude that James was in actual possession of the glass pipe, which he then discarded upon seeing officers approach him. Detective Jenkin testified that, after following James into the alley and ordering him to stop, James instead looked over his right shoulder, continued walking, and kept his hands by his waistline. As Detective Jenkin ordered James to show his hands, Detective Jenkin observed multiple items falling from James's waistline, the last of which Detective Jenkin identified as a black cylindrical item. When

---

[5] *Hargrave v. Commonwealth*, 724 S.W.2d 202, 203–04 (Ky. 1986).

[6] *See Haney v. Commonwealth*, 500 S.W.3d 833, 835 (Ky. App. 2016) (citing *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009)) ("Constructive possession, much like actual possession, may be proven by circumstantial evidence."); *Commonwealth v. Goss*, 428 S.W.3d 619, 625 (Ky. 2014) (citing *Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012) ("It has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence.").

[7] *Dillingham v. Commonwealth*, 995 S.W.2d 377, 380 (Ky. 1999) (citing *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997)).

[8] *Davis v. Commonwealth*, 795 S.W.2d 942, 945 (Ky. 1990).

[9] *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000).

Detective Jenkin returned to that area to see what had fallen, he discovered the black cylindrical item, which turned out to be an empty tube for diabetic test-strips and the glass pipe containing methamphetamine about six to eight inches apart from each other.

James argues that these facts show only a mere possibility of wrongdoing and are therefore insufficient to survive a motion for a directed verdict because Detective Jenkin could not identify as the glass pipe any one item falling from James's waistline. But that argument "conflates sufficiency with necessity."[10] The relevant question is whether the circumstantial evidence taken as a whole would make it clearly unreasonable for a juror to find guilt.[11] While this Court has never explicitly so stated, to survive a motion for directed verdict it is not necessary that the Commonwealth present evidence specifically identifying a particular item being dropped by the defendant as the illegal contraband if there is adequate circumstantial evidence linking the defendant to that contraband.

The Sixth Circuit Court of Appeals has sustained possession charges based on similar circumstantial evidence.[12] The defendant in *United States v. Garcia*[13] fled an apartment complex when officers arrived to investigate reported gunfire. While in pursuit, an officer saw objects fall from the

---

[10] *United States v. Garcia*, 758 F.3d 714, 719 (6th Cir. 2014).

[11] *Benham*, 816 S.W.2d at 187.

[12] The Sixth Circuit reviews claims of insufficient evidence under the same standard as our courts. *See United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999) ("In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt.").

[13] 758 F.3d 714, 720 (6th Cir. 2014).

defendant's person as he scrambled over a fence.[14] After the officers subdued the defendant, they returned to the fence and discovered on the ground a baseball cap and a silver revolver. [15] The Government acknowledged that no officer had seen the defendant holding the gun, and the officer who observed the items falling from the defendant could not identify any one of them as the gun.[16] The court nevertheless concluded there was sufficient evidence to establish beyond a reasonable doubt that the defendant had actual possession of the revolver even though the circumstantial evidence required the jury to infer that one of the objects being dropped was the revolver.[17]

In rejecting an identical argument as James advances here—that there was insufficient evidence because no witness saw the defendant "possess an object that specifically resembled the silver revolver"—the court emphasized that there was "no single hallmark of sufficiency in cases charging actual possession."[18] Rather, the court "must view *all* of the evidence, both direct and circumstantial in the light most favorable to the prosecution."[19] Accordingly, the court explained the applicable rule as follows:

> [T]o sustain a conviction for actual possession of contraband that the defendant allegedly discarded before his or her arrest, the witness linking the defendant to the contraband need not be able to describe with specificity the object thrown by the defendant if adequate circumstantial evidence links the defendant to the contraband. The relevant question in these cases is whether the

---

[14] *Id.* at 716.

[15] *Id.*

[16] *Id.* at 718–19.

[17] *Id.* at 721–22.

[18] *Id.* at 719–20.

[19] *Id.* at 719.

Government's theory is supported by sufficient circumstantial evidence.[20]

The same rule applies in this case. The fact that James dropped the items immediately after Detective Jenkin revealed himself as state police and the fact that the glass pipe was found only six to eight inches from the black cylinder, taken together with the fact that Detective Jenkin observed multiple items being dropped, was more than enough for a juror reasonably to infer that James was in actual possession of the glass pipe.[21]

James argues that the circumstantial evidence linking the defendant to the contraband in *Garcia* is far stronger than the evidence linking James to the glass pipe in this case. Specifically, James notes that the revolver and baseball cap in *Garcia* were found lying on top of a layer of newly fallen snow and there were no other items, while the contraband in this case was found in a busy alley frequented by drug users. While the inference in *Garcia* may be stronger, we cannot say the required inference in this case—that one of the items Detective Jenkin saw falling from James's waistline was the glass pipe—is one that would be clearly unreasonable for a jury to draw. Similarly, the

---

[20] *Id.* at 720.

[21] The Commonwealth cites to several cases for the proposition that James had constructive possession of the glass pipe. Because we uphold the trial court judgment on a theory of actual possession, we decline to address those cases. Similarly, James also points us to *Franklin v. Commonwealth*, 490 S.W.2d 148, 150 (Ky. 1972), a constructive-possession case, to argue that the Commonwealth has not put forth sufficient evidence to establish that James had knowledge of the glass pipe—a requirement of constructive possession. We decline to address the applicability of this case because we conclude that the Commonwealth has put forth sufficient evidence for a jury to conclude that James was in actual possession of the glass pipe and methamphetamine.

Commonwealth in the present case put forth more than a mere scintilla of proof showing that James was in actual possession of the glass pipe.[22]

We note that this analysis differs from that of the Court of Appeals and find it important to explain why. The Court of Appeals concluded that the evidence was "insufficient to survive a directed verdict that the glass pipe was in the dominion or control of James, *even for constructive possession.*" (emphasis added). This statement from the appellate panel appears to us to miss the point. A case may present facts sufficient for a jury reasonably to conclude that a defendant did not have constructive possession of an item but did have actual possession. While the Court of Appeals may have been correct in concluding that the facts of this case were insufficient to sustain a conviction premised on a theory of constructive possession, it still needed to determine whether the conviction could be upheld under a theory of actual possession because the jury instructions for the possession charge would have allowed either.[23]

In this case, we conclude that the facts are sufficient for a reasonable jury to conclude that actual possession occurred, and we therefore reverse the

---

[22] James points us to *Johnson v, Commonwealth*, 885 S.W.2d 951 (Ky. 1994), to support his argument that the Commonwealth put forth only a scintilla of proof in that the evidence shows only a mere possibility of wrongdoing. But in *Johnson* the Commonwealth had failed to put forth any evidence that the defendant had acted with extreme indifference to human life when his coal truck struck and killed the victim other than evidence showing that the defendant might have run a red light. *Id.* at 953. By contrast, the Commonwealth in this case presented evidence that the glass pipe was found in the area where the defendant was observed dropping items, the glass pipe was found directly adjacent to an item that James admitted to dropping, and that the items were seen falling from James's waistline as he walked away from officers and ignored their commands to show his hands. The Commonwealth put forth more than a mere scintilla of evidence in this case.

[23] The jury instructions defined "possession" as "to have actual possession or otherwise to exercise actual dominion or control over a tangible object."

Court of Appeals and reinstate the circuit court's judgment with respect to the possession charge.

## 2. The trial court erred in denying James's motion for a directed verdict with respect to the tampering with physical evidence charge.

James also argues that the Commonwealth failed to produce sufficient evidence to support a conviction for tampering with physical evidence. Specifically, James argues that the mere dropping of the glass pipe on the ground did not constitute either a concealment or removal of evidence within the tampering statute. We agree.

KRS 524.100 makes it unlawful for a person to tamper with physical evidence. In relevant part, that statute provides the following:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
>> (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . . .[24]

As with every criminal statute, KRS 524.100 requires the Commonwealth to prove both that the defendant acted with the requisite criminal intent *and* that he completed the requisite criminal act. Under this statute, the Commonwealth satisfies the intent element by showing beyond a reasonable doubt that the defendant acted with "*intent* to impair [the evidence's] verity or availability in the official proceeding."[25] And, separately, the Commonwealth satisfies the criminal-act element by showing beyond a reasonable doubt that

---

[24] KRS 524.100.

[25] *Id.* (emphasis added).

11

the defendant completed one of the following proscribed acts: "destroys, mutilates, conceals, removes or alters physical evidence."[26]

In this case, the issue is whether James committed the requisite criminal act. James did not destroy, mutilate, or alter the glass pipe, so the specific question is whether he "concealed" or "removed" the glass pipe when he dropped it in the presence of Officer Jenkin.

While this Court has applied the tampering statute in numerous contexts, until now, it has not addressed whether the criminal-act element is met in the unique set of facts this case presents: a person, in plain view of an officer, drops or tosses away evidence of a possessory crime in a manner that makes the evidence easily retrievable by law enforcement.

Our goal in construing statutes is to give effect to the intent of the General Assembly.[27] We derive that intent first and foremost "from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration."[28] In examining the language, we presume the General Assembly intended for the statute to "be read as a whole and in context with other parts of the law."[29] We further presume that the General Assembly did not intend for a statute to yield an absurd result.[30] "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the

---

[26] *Id.*

[27] *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)

[28] *Id.* (citing *Osborne v. Commonwealth*, 185 S.W.3d 645 (Ky. 2006).

[29] *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 93 (Ky. 2005).

[30] *Layne v. Newberg*, 841 S.W.2d 181 (Ky. 1992).

12

statute's legislative history; the canons of construction; *or especially in the case of model or uniform statutes, interpretations by other courts.*[31]

The General Assembly sought to enumerate in KRS 524.100 the specific criminal acts that amount to tampering, but it did not define those terms. The meanings of the two words at issue in this case—*conceal* and *remove*—appear plain on their face but become less clear when applied to the facts of this case. *Meriam-Webster* defines "conceal" as "to prevent disclosure or recognition of" or "to place out of sight."[32] That dictionary also defines "remove" as "to change the location, position, station, or residence of."[33] Construed in a manner so as not to render the word "conceal" redundant, "remove" must refer to the act of changing the location or position of a piece of an object in a way that moves it from the scene of a crime.[34]

While the application of these terms is straightforward in some scenarios—for example, where a defendant removes bullet casings from the scene of a murder or where a person hides drugs inside the insole of a shoe—it is more difficult in this case. James's dropping of the glass pipe, even with his back turned to the officer, did not prevent the disclosure of the glass pipe or

---

[31] *Shawnee Telecom Resources, Inc.*, 354 S.W.3d at 551 (citing *Financial Group, Inc. v. Morton*, 289 S.W.3d 193 (Ky. 2009); *Knotts v. Zurich*, 197 S.W.3d 512 (Ky. 2006); *Stephenson v. Woodward*, 182 S.W.3d 162 (Ky. 2005)) (emphasis added).

[32] "Conceal." Meriam-Webster Online Dictionary. *2019*. https://www.merriam-webster.com/dictionary/conceal.

[33] "Remove." Meriam-Webster Online Dictionary. *2019*. https://www.merriam-webster.com/dictionary/remove.

[34] As one court noted while interpreting a nearly identical tampering statute, "if the term 'remove' is not to be redundant of the other terms used in the statute (especially 'suppress' and 'conceal'), then 'remove' must refer to the act of moving an object from the scene of the crime, or from any location where its evidentiary value can be deduced, to some other place where its evidentiary significance may not be detected." *Vigue v. State*, 987 P.2d 204, 210 (Alaska 1999).

place it out of the officer's sight. Nor did it move the glass pipe from the scene of the crime.

Faced with, at best, a less-than-clear application of the statute to the facts before us, we look to cases from other jurisdictions that have applied these terms to similar facts. Notably, KRS 524.100 is based on Section 241.7 of the Model Penal Code,[35] and twenty-eight other jurisdictions have enacted tampering statutes based on that section.[36] While the language of those statutes varies slightly, almost all of them include as part of the *actus reus* the word "conceal," and a majority include the word "remove."[37]

Of those twenty-eight other jurisdictions, "most, if not all" that have addressed this specific issue "have recognized that a defendant does not violate the statute when he or she merely 'abandons' physical evidence of a street crime while running from police or fleeing the scene of the crime."[38] Instead,

---

[35] Section 241.7 of the Model Penal Code provides the following:

> A person commits a misdemeanor if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > (1) alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation; or
> >
> > (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such proceeding or investigation.

Model Penal Code § 241.7 (Am. Law Inst. 1985).

[36] *See State v. Hawkins*, 406 S.W.3d 121, 133 n.11 (Tenn. 2013) (collecting cases).

[37] The following states do not include the word "removal": New York, N.Y. Penal Law § 215.40 (McKinney 2010); Texas, Tex. Penal Code Ann. § 37.09 (West 2011 & Supp. 2012); Delaware, Del. Code Ann. tit. 11, § 1269 (2007); Tennessee, Tenn. Code Ann. § 39–16–503 (2010); Illinois, 720 Ill. Comp. Stat. 5/31–4 (West 2010); Missouri, Mo. Ann. Stat. § 575.100 (West 2011); and New Mexico, N.M. Stat. Ann. § 30–22–5 (LexisNexis 2004). New Mexico's statute also uses the word "hiding" instead of "conceal." *Id.* at (A).

[38] *Hawkins*, 406 S.W.3d at 133. *See also Vigue v. State*, 987 P.2d at 206 ("This issue has been addressed by several states that have evidence-tampering statutes similar to

14

these courts agree that *"when a person who is committing a possessory offense drops evidence in the presence of police officers, and the officers are able to recover the evidence with minimal effort, discarding the evidence amounts to 'mere abandonment,' not tampering."*[39] In other words, according to our sister states, a person in this specific scenario has not completed the act of "concealing" or "removing" the evidence.

In *Vigue v. State,* for example, the Alaska Court of Appeals was faced with almost identical facts and concluded that the defendant, Vigue, had merely abandoned the evidence.[40] In that case, an officer had attempted to stop Vigue on a street corner and ordered him to show his hands.[41] As Vigue walked toward the officer, he kept his hands behind his back, and the officer saw Vigue make "a little shaking motion" with his hands, as if Vigue had tried to drop something.[42] "Because Vigue's body blocked his view, [the officer] could not see what, if anything, had fallen to the ground."[43] After Vigue walked to the officer's car, the officer walked over to where Vigue made the shaking motion and retrieved from the ground "five little white rocks that appeared to be crack cocaine."[44]

---

Alaska's. Although these courts rely on different rationales for their decisions, they unanimously agree that a defendant's act of dropping or tossing away evidence in the sight of the police does not constitute the actus reus of tampering with physical evidence.").

[39] *Hawkins,* 406 S.W.3d at 134 (emphasis added).

[40] 987 P.2d at 211.

[41] *Id.* at 205.

[42] *Id.*

[43] *Id.*

[44] *Id.*

The Court held that Vigue had neither "concealed" nor "removed" the cocaine within the meaning of the statute.[45] The Court construed the word "remove" as "moving an object from the scene of the crime, or from any location where its evidentiary value can be deduced, to some other place where its evidentiary significance may not be detected."[46] Thus, the Court determined that Vigue's conduct did not constitute the removal of evidence.[47]

In determining whether Vigue had "concealed" the evidence, the Court found it necessary to distinguish between the criminal act and criminal intent elements of the statute:

> If the terms "suppress" and "conceal" are construed broadly, then it is possible to speak of Vigue's conduct as an act of suppression or concealment. By ridding his pockets and hands of the cocaine, Vigue probably intended to make it less likely that the cocaine would come to Officer Kantor's attention.
>
> But it is important not to confuse Vigue's intent with his physical actions. The evidence-tampering statute uses the terms "suppress" and "conceal" to define the *actus reus* of the crime. In addition to the *actus reus*, the statute also requires proof of a culpable mental state—here, Vigue's intent to "impair [the] availability" of the evidence. The fact that Vigue intended to make it harder for Officer Kantor to detect the cocaine does not mean that Vigue actually succeeded in "suppressing" or "concealing" the cocaine when he tossed or dropped it on the ground. Indeed, under the facts of this case, no suppression or concealment occurred: Officer Kantor observed Vigue's action and was alerted to the possibility that something might be on the ground at the spot where Vigue had been standing. We agree with the courts of Pennsylvania, Florida,

---

[45] *Id.* at 210. Alaska's tampering statute, Alaska Stat. § 11.56.610 (2018), is almost identical to KRS 524.100 except that it also includes the term "suppress" in defining the *actus reus*: "A person commits the crime of tampering with physical evidence if the person . . . destroys, mutilates, alters, suppresses, conceals, or removes physical evidence with intent to impair its verity or availability in an official proceeding or a criminal investigation . . . ." Alaska Stat. § 11.56.610 (2018).

[46] *Vigue*, 987 P.2d at 210.

[47] *Id.*

16

Tennessee, and New Jersey that conduct such as Vigue's amounts to nothing more than abandonment of the evidence.[48]

In *State v. Lasu*, the Nebraska Supreme Court also considered almost identical facts and concluded that the defendant had merely abandoned the evidence.[49] In that case, Lasu was walking through a service station while being followed by an officer when he pulled a bag of marijuana out of his pocket and dropped it into a cardboard bin of snack foods.[50] The bag landed on top, and the officer immediately retrieved it and arrested Lasu.[51]

The Court interpreted another MPC-based tampering statute and concluded that Lasu had neither "concealed" nor "removed" the evidence.[52] Like the Court in *Vigue*, the *Lasu* Court found "it important not to confuse [Lasu's] intentions with his physical actions."[53] The Court explained that "[e]ven if Lasu meant to make it more difficult to find the contraband and connect it to him, he did not remove it from the scene of the possessory offense, nor did he actually conceal it when he abandoned it. He made the evidence easier to find, even if it was not found on him."[54]

---

[48] *Id.*

[49] 768 N.W.2d 447, 452 (Neb. 2009).

[50] *Id.* at 449.

[51] *Id.* at 449–50.

[52] *Id.* at 451. Nebraska's tampering statute provides that "[a] person commits the offense of tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal authority, he . . . [d]estroys, mutilates, conceals, removes, or alters physical evidence with the intent to impair its verity or availability in the pending or prospective official proceeding . . . ." Neb. Rev. Stat. § 28-922 (2019).

[53] *State v. Lasu*, 768 N.W.2d 447, 452 (Neb. 2009) (citation omitted).

[54] *Id.* The Court acknowledged that it was not alone in finding conduct like Lasu's to fall short of concealment or removal: "[C]ourts considering effectively identical statutory language have uniformly concluded that when a defendant merely drops, throws down, or abandons evidence in the presence of law enforcement, such conduct

17

In *Commonwealth v. Delgado*,[55] the defendant was being pursued by law enforcement after fleeing the scene of a crime.[56] With an officer right behind him, the defendant tossed what the officer observed to be a bag of cocaine onto a garage roof.[57] Interpreting a similar tampering statute,[58] the Supreme Court of Pennsylvania explained that the defendant's "act of discarding contraband in plain view of the police does not rise to a level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute."[59] Noting that the statutory penalty for tampering with physical evidence was greater than the penalty for possessing cocaine, the Court surmised that the General Assembly could not have "intended the simple act of abandoning evidence in plain view of the police to constitute the commission of an additional crime of a greater degree."[60]

It appears that, "under the scenarios presented, the clear weight of authority from other states concludes that where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, this conduct does not

---

will not sustain a conviction for tampering with physical evidence." *Id.* at 451 (citations omitted).

[55] 679 A.2d 223 (Pa. 1996).

[56] *Id.* at 225.

[57] *Id.*

[58] Pennsylvania's tampering statute imposes criminal liability where a defendant "alters, destroys, conceals, or removes any record, document or thing with intent to impair its verity or availability in [an official] proceeding or investigation." 18 Pa.C.S. § 4910.

[59] 679 A.2d at 225.

[60] *Id.*

constitute"[61] tampering by either concealment or removal that will support an evidence-tampering charge.

Faced with a unique set of facts and statutory text that is not immediately clear, we find this interpretation instructive. And we further note that it is consistent with other parts of the law and with the presumption that our legislature does not write statutes that produce absurd results. While it could be argued that the terms *remove* and *conceal* are so broad on their face as to include a person's act in dropping or tossing evidence with their back turned to an officer, such a reading would "lead to results that are inexplicably harsh."[62] The General Assembly chose to make the tampering with physical evidence a Class D felony.[63] And if the words *conceal* or *remove* are interpreted so broadly, "then minor possessory offenses would often be converted to felonies with little reason."[64] While James's initial possessory charges could hardly be considered minor, it is not difficult to imagine a case where a person under 21 who is in possession of alcohol drops the alcohol when he is approached by an officer. In such a case, that person's Class B misdemeanor[65] could readily be converted into a Class D felony for

---

[61] *In re M.F.*, 734 N.E.2d 171, 178 (Ill. App. Ct. 2000).

[62] *Vigue v. State*, 987 P.2d 204, 211 (Alaska 1999).

[63] KRS 514.100(2).

[64] *Vigue*, 987 P.2d at 211. *See also State v. Lasu*, 768 N.W.2d 447, 452 (Neb. 2009) ("It would be contrary to our basic principles of statutory construction, and to common sense, to conclude that a misdemeanor possession of marijuana would become a Class IV felony because the defendant drops the contraband in plain view.").

[65] *See* KRS 244.990(1); KRS 244.085(2) (together providing that a person between the age of 18 and 21 in possession of an alcoholic beverage is subject to a Class B misdemeanor).

tampering with physical evidence. Considering our long-held rule that "[d]oubts in the construction of a penal statute will be resolved in favor of lenity and against a construction that would produce extremely harsh or incongruous results or impose punishments totally disproportionate to the gravity of the offense,"[66] we cannot conclude that the General Assembly intended the tampering statute to be read as broadly as the Commonwealth contends.

And, like the Court in *Vigue*, we acknowledge that James, by "ridding his pockets and hands" of the glass pipe, almost certainly "intended to make it less likely that the [evidence] would come to Officer [Jenkin's] attention."[67] But that fact has no bearing on whether the proscribed acts of concealment or removal occurred. "In addition to the *actus reus*, the statute also requires proof of a culpable mental state"[68]— defined as the "intent to impair [the evidence's] verity or availability [in the official proceedings against him]."[69] To find that tampering occurred merely because James sought to distance himself from the evidence or prevent the officer from discovering it would be to confuse James's intent with his physical actions.

Applying this interpretation to the facts before us, we hold that James neither concealed nor removed the glass pipe within the meaning of KRS 524.100. James, knowing he was in the presence of a police

---

[66] *Commonwealth. v. Colonial Stores, Inc.*, 350 S.W.2d 465, 467 (Ky. 1961)

[67] *Vigue*, 987 P.2d at 210.

[68] *Id.*

[69] KRS 524.100.

officer but with his back turned, dropped multiple items to the ground—one of which, the jury reasonably inferred, was a glass pipe containing methamphetamine. After handcuffing James, Detective Jenkin walked over to the area where he saw the items fall and collected the glass pipe from the ground. Even though James may have intended to prevent the discovery of the glass pipe, dropping or throwing the evidence to the ground in the presence and view of Officer Jenkin in a manner that left the evidence easily retrievable was not an act of concealment or removal sufficient to sustain an additional charge for tampering with physical evidence.

We caution, however, that the dropping or tossing away of evidence in the presence of a law enforcement officer, even when the drugs are eventually recovered, is not always outside the reach of the tampering statute. In some scenarios, the affirmative act of dropping or throwing away the evidence even in the presence of law enforcement officers may constitute a violation of the statute, depending on the specific facts of the case. For example, where the tossing away of evidence makes the evidence "substantially more difficult or impossible" for law enforcement to recover and use in a later proceeding against the defendant, the act may result in concealment, even if the officers ultimately succeed in retrieving the evidence.[70] Thus, "when a defendant disposes of

---

[70] Other courts have held just that. *See, e.g., Anderson v. State*, 123 P.3d 1110, 1119 (Alaska 2005) ("This is not to say that the act of tossing away evidence can never constitute evidence tampering. The test appears to be whether the defendant disposed of the evidence in a manner that destroyed it or that made its recovery substantially more difficult or impossible."); *Hayes v. State*, 634 So.2d 1153, 1154 (Fl. Dist. Ct. App. 1994) (affirming tampering conviction where defendant, while being pursued by a

21

contraband in a manner intended to destroy the evidence or make recovery impossible, such conduct may constitute evidence tampering."[71] By contrast, the interpretation adopted here today applies only "where the defendant merely drops, throws down, or abandons [potential evidence] in the vicinity of the defendant and in the presence and view of the police,"[72] and in a manner that renders the evidence quickly and readily retrievable by law enforcement.

The Commonwealth points us to several Kentucky cases to support its argument that Kentucky has already rejected the interpretation of KRS 524.100 we adopt here. But we disagree because those cases are consistent with our interpretation of the statute and further help to illustrate the outer limits of concealment and removal. Specifically, the conduct at issue in many of those cases occurred outside the presence of police officers, and the effect of the defendant's act was to make it substantially more difficult for the officers to recover the evidence.

In *O'Bannon v. Commonwealth*, we upheld a tampering-with-physical-evidence conviction where the defendant, outside the presence of an officer, tossed a knife out of a moving car window while driving away from the scene of an assault.[73] Unlike the act of merely dropping or

---

police officer, pulled a "baggie" containing crack cocaine out of his pants and dropped it into a drainage outlet, despite the wet "baggie" later being retrieved by law enforcement); *State v. Jennings*, 666 So.2d 131 (Fla. 1995) (defendant's swallowing of cocaine rocks in response to an officer's shouting "police" could amount to concealment or tampering).

[71] *In re M.F.*, 734 N.E.2d at 178.

[72] *Id.*

[73] No. 2016–SC–000133–MR, 2017 WL 6380241, at *1, 4 (Ky. Dec. 14, 2017).

tossing evidence in front of an officer, throwing evidence out of a moving car with no officer present is an act that makes recovery of the evidence much more difficult. In *Crayton v. Commonwealth*, we upheld a tampering conviction where the defendant was running from police officers and, while outside the presence of officers, threw a gun into another part of the backyard in which he was found hiding.[74] No officer had observed the defendant toss the gun, and it was only after officers thought to search the area that the gun was recovered.[75] Like the defendant's act in *O'Bannon*, the tossing of the gun into a backyard outside the presence of officers made the gun more difficult to recover.

In other cases that the Commonwealth cites, the defendant did not simply drop or toss the evidence, but instead affirmatively placed the evidence in a location that would otherwise hide it from plain view. In *Commonwealth v. Henderson*, we upheld a tampering conviction where, during a police hot pursuit but outside the presence of any officers, the defendant had placed stolen money under the insole of his shoe.[76] We noted that the simple carrying away of evidence of a possessory offense does not normally amount to tampering, but that the placement of

---

[74] No. 2013–SC–000266–MR, 2014 WL 2811316, at *1, 4–5 (Ky. June 19, 2014).

[75] *Id.* at *1. We emphasize that Crayton tossed the gun into another part of the backyard while outside the presence and observation of police officers, a crucial fact in the analysis of the drop-and-toss cases of other jurisdictions we cite in this opinion.

[76] 85 S.W.3d 618, 619–20 (Ky. 2002). We note that the actual act of concealment occurred outside the direct presence and observation of officers. *Id.* at 619. ("At some point during the chase, the purse, emptied of its money, was thrown out the window of the car. Appellee admitted that during the chase he put the money from the purse in the insole of his shoe."). In any case, the act of hiding evidence inside the insole of a shoe falls squarely within the definition of "concealment."

23

evidence in such an unconventional location—in this case, the insole of a shoe—was an affirmative act of concealment that evidenced an intent to make the evidence unavailable to law enforcement.[77] In *Taylor v. Commonwealth*, we similarly upheld a tampering conviction where the defendant, while being observed by a police officer, took a clear plastic bag containing drugs and placed it under the seat of a car in which he was sitting.[78] Even though the officers observed the defendant's act and knew where the drugs were, the act of hiding the drugs under the defendant's seat constituted "concealment."[79] More recently, in *Weatherly v. Commonwealth*, we upheld a tampering conviction where the defendant placed a bag of marijuana under the passenger side of a truck while the officer was performing a vehicle search.[80] The officer discovered the evidence only after smelling unsmoked marijuana and deciding to look under the truck.[81]

By contrast, the rule here reflects the narrow set of facts in front of us: where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place. Both the text and the

---

[77] *Id.* at 619–20.

[78] 987 S.W.2d 302, 303–05 (Ky. 1998).

[79] *Id.* at 305.

[80] No. 2017–SC–000522–MR, 2018 WL 4628570, at *1–3 (Ky. Sept. 27, 2018).

[81] *Id.* at *1.

intent of the legislature suggest that these terms cannot be read more broadly.

We address finally the rationale of the dissenting opinion, as we find its interpretation of KRS 524.100 misconstrues the Commentary to that statute. Specifically, the dissent points to a portion of the Commentary to re-write the elements of the statute into the following: "[i]f the defendant believed [the evidence] was to be produced or used in a proceeding and his actions were designed to prevent that from occurring, the elements of proof are satisfied." The full text of the paragraph from which the dissent pulls this quote reads as follows:

> There is no requirement that the evidence actually be admissible. If the defendant believed it was to be produced or used in a proceeding and his actions were designed to prevent that from occurring, the elements of proof are satisfied.

Based on the full context, it is clear this paragraph was meant to convey only that it does not matter whether the evidence would ultimately be admissible at trial—the defendant simply needs to believe the evidence would be used against him to be subject to criminal liability under the statute. Instead, the dissent uses this portion of Commentary to expand the criminal act element from those specific acts chosen by the General Assembly— "destroys, mutilates, conceals, removes, or alters"—to "any action designed to prevent the evidence to be produced in a proceeding." Here, the dissent argues, James committed the crime of tampering with physical evidence because his act was "designed to conceal or remove evidence."

But the General Assembly did not choose to include the phrase "*designed to*" in the text of KRS 524.100. Instead, they sought specifically to

enumerate in plain, clear terms the proscribed criminal acts that the General Assembly found so egregious as to require subjecting their perpetrators to Class D felony criminal liability. Accepting the dissent's interpretation would not only undermine the text of the statute and render meaningless the words carefully placed therein, but it would also vastly increase the conduct coming within the scope of this statute. Bound by the principles of statutory construction explained above, we cannot agree with the dissent's interpretation.

James's dropping of the evidence here was observed by Detective Jenkin, and the evidence he left lying on the ground of an alleyway was retrieved only moments after he was arrested. Like the majority of other jurisdictions, we hold now that this evidence of concealment or removal was insufficient for a reasonable juror to find James guilty of tampering with physical evidence, a Class D felony. Accordingly, James was entitled to a directed verdict on the tampering-with-physical-evidence charge.

### III. CONCLUSION.

For the foregoing reasons, we reverse the Court of Appeals' opinion and reinstate the trial court judgment with respect to the possession charge, but we affirm the Court of Appeals' opinion reversing the conviction for tampering with physical evidence. This case is remanded to the trial court for entry of a new judgment consistent with this opinion.

All sitting.  Minton, C.J., Buckingham, Hughes, and Keller, JJ., concur. Wright, J., concurs in part and dissents in part by separate opinion, in which Lambert, and VanMeter, JJ., join.

26

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: While I concur with the majority as to the other issues, I respectfully dissent from the section of the majority's opinion which eviscerates prosecutorial authority to charge defendants with tampering with physical evidence under the duly enacted KRS 524.100. This section of the opinion takes the evaluation of the facts away from the jury.

James argues on cross-appeal that even if a court found that he possessed the glass pipe, the dropping of it on the ground did not constitute tampering with physical evidence. Thus, he insists he should be entitled to a directed verdict of acquittal on that charge. The majority agrees with James and I dissent from that holding for the reasons that follow.

KRS 524.100 provides:

A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, *conceals, removes* or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . .

(Emphasis added.)

The majority's framing of the issue—"the issue is whether James committed the requisite criminal act. . . . when he dropped it in the presence of Officer Jenkin"—clearly and unambiguously describes an action "designed to prevent" the evidence from being "used in a proceeding." *Id.*, 1974 Kentucky

27

Crime Commission/LRC Commentary.[82] However, once the majority sets up the issue, it adopts a new judicially-created exception to the statutory offense: "where a defendant merely drops or tosses evidence in the presence of a police officer, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place." This narrow rule ignores the plain language of the statute, replacing it with a judicially-constructed definition based upon other states' court decisions and wholly lacking in any reference to the actual language of KRS 524.100.

In the case currently before the court, Jenkin identified himself as a police officer and ordered James to stop and show his hands. James continued to walk away from the officer with his hands in front of him near his waist. The police officer drew his gun and ordered James to stop and show his hands. Jenkin could see that James continued to walk away, keeping his hands in front of (and shielded by) his body, and dropping items from his waist as he went without looking down or examining the items. As a result, he dropped the only item Jenkin saw and could identify—a black cylindrical container of diabetic testing strips. The black cylinder with diabetic testing strips was legal. The question arises: when a police officer had identified himself, drawn his gun, and ordered James to stop and show his hands, why would James take

---

[82] As we have held: "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on *any other method or source*. We ascertain the intention of the legislature from *words used in enacting statutes* . . . ." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (internal citations and quotations omitted). Therefore, if the statute were plain, we would not look to the Commentary for clarification. The majority's position is contrary to the plain language of the statute. If we accept this interpretation, then there would be an ambiguity in the language. Therefore, I turn to the Commentary for a resolution of this ambiguity.

the risk of continuing to walk away dropping items—the last of which was a perfectly legal black cylinder with diabetic testing strips?

It was not clearly unreasonable for the jury to find that James attempted to impair availability or verity of the glass pipe containing methamphetamine by dropping it on the ground. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). This is a question of fact and of evaluation of the evidence properly left to the jury; today, the majority disturbs the jury's findings of fact. Under these circumstances, there was sufficient evidence to leave the matter in the hands of the jury. James had intent and acted to conceal his possession of incriminating evidence and conceal his attempt to remove the evidence from his possession so as to impair its verity or availability in an official proceeding.

The majority's new rule is not the appropriate analysis for tampering with physical evidence. The perpetrator's act does not have to result in the actual deprivation of evidence for the defendant to have the requisite *actus reus* required. It was not clearly unreasonable for the jury to find that James attempted to impair availability or verity of the methamphetamine pipe by dropping it in a discrete manner (shielding his action with his body) while walking away from an officer who directed him to stop. The jury considered the fact that even when the officer drew his gun and again commanded James to stop, James continued to walk away and drop items. The jury properly found that James "removed" the evidence "to impair its verity or availability in the official proceeding." KRS 524.100(a). Therefore, the record demonstrates that the Commonwealth presented sufficient evidence that would allow a jury to convict James of tampering with physical evidence.

For further elucidation of the issues created by the majority's holding today, imagine two scenarios. In the first, the suspect sees law enforcement and freezes. He is properly patted down, and the officer feels what he believes to be contraband. When the contraband is pulled out, it is illegal. The suspect is charged with the crime of possession. The evidentiary inference—the proof—at trial is straightforward: the defendant possessed illegal contraband. The defendant can argue that the contraband was not his or something similar, but that argument is a clear stretch.

In the second scenario, same as above, when he sees law enforcement, the suspect removes the contraband from his person, and either drops it or throws it. The suspect is charged with possession. The proof and the inferences are different. A defendant was spotted by an officer. As the officer approached, the defendant dropped/threw an unknown item and after defendant was secured, an officer found the item. This item was illegal, and the officer concludes that the defendant possessed illegal contraband. As opposed to the first scenario, the defendant's actions are to rid himself of (remove) the illegal contraband hoping that the officer did not notice. No doubt exists that his "intent [is] to impair the truth or availability of evidence." KRS 524.100, 1974 Kentucky Crime Commission/LRC Commentary. Even if the officer witnessed the defendant's actions and discovered the contraband outside of his person the defendant at least has created more defenses to argue at trial in the second scenario: (a) That item was not mine; (b) I dropped/threw a different item than the one picked up by the officer; (c) it was a high-crime area, and the item was not mine; and (d) the officer was mistaken in what he saw.

30

A defendant separates himself from the item in order to "not possess" it, *i.e.,* he "removes" it from his possession. No viable argument exists that this action was made for any reason other than "the intent to impair its verity or availability in the official proceeding." *Id.* The commentary states "[r]ather, it is sufficient if the defendant believes an official proceeding may be instituted and *if he engages in the proscribed conduct with the specified intent to impair the truth. . . .*" *Id.* (emphasis added). The truth is, the defendant possessed the contraband. By removing (and either dropping or throwing it), is not the defendant engaging in the prohibited conduct? Has he not formed the "specified intent to impair the truth?" If his intent was otherwise, why did the suspect remove and drop the evidence? What other possible reason could there be for the drop? I understand that the majority may consider this statute to be anachronistic and overlooked. They may even consider it to be bad policy. However, the legislature is the proper branch of government to fix this perceived issue.[83]

The statute's commentary sets forth that "[i]f the defendant believed [the evidence] was to be produced or used in a proceeding and his actions were designed to prevent that from occurring, the elements of proof are satisfied." *Id.,* 1974 Kentucky Crime Commission/LRC Commentary. In James's case, these elements are met: (1) a police stop implies that any evidence discovered during the stop or post-stop investigation will be used in a future official

---

[83] In fact, the 1974 Kentucky Crime Commission Commentary points out that this offense used to be treated as an obstruction of justice, a misdemeanor. Whether we agree with the 1974 decision to enact this statute, the legislature undoubtedly examined the policy surrounding tampering with physical evidence and elected to increase its punishment status, not narrow its use.

31

proceeding, and (2) dropping a pipe containing methamphetamine away from one's body is a strategy without a doubt "designed to prevent" that evidence from being used in a future proceeding.

Additionally, nowhere in the statute, its commentary, or relevant Kentucky case law is the presence or absence of law enforcement during a defendant's actions considered the key determinant as to whether the precise elements of the crime were met. Yet, the majority reads the aforementioned language into the statute, thus crippling KRS 524.100 by halting law enforcement's ability to charge defendants with tampering when "in the presence of a police officer." This non-statutorily-based rule will ultimately give little guidance to trial courts within this Commonwealth as to the application of tampering with physical evidence charges. A better approach would be to follow the plain language of the statute and its commentary, and allow such charge when the defendant "engages in the proscribed conduct with the specified intent to impair the truth or availability of evidence he believes will be used" in an official proceeding. KRS 524.100, 1974 Kentucky Crime Commission/LRC Commentary.

In bending the statutory language to its breaking point, the majority distinguishes a long line of cases which conflict with its judge-made rule and overrules yet another that it cannot adequately distinguish.

For example, in *Mullins v. Commonwealth*, this Court held "pursuit by the police may be required for a conventional placement of the evidence to become tampering." 350 S.W.3d 434, 443 (Ky. 2011). The majority insists that unconventional location is but one relevant factor in determining whether the defendant acted with the necessary intent. I do not believe the distinction

32

between conventional and unconventional location is entirely dispositive of whether the act of tampering occurred. Rather, the conventional-unconventional analysis is included as a factor, because "[t]he jury could reasonably infer intent to impair the availability of the evidence because it was removed to an unconventional place during a pursuit."

In *Crayton*, police officers conducted an on-foot pursuit following a robbery. 2014 WL 2811316 at *1. During this pursuit, Crayton utilized a gun to fire shots at the officers. *Id.* The officers found a gun in the yard where Crayton was apprehended. *Id.* Crayton was convicted of the lesser-included offense of attempted first-degree assault, first-degree robbery, first-degree fleeing or evading the police, tampering with physical evidence, and resisting arrest. *Id.* at 2. On appeal, Crayton argued that the trial court erred in denying his motion for a directed verdict of acquittal for the offense of tampering with physical evidence. *Id.* at 3. Specifically, he argued:

the evidence did not support a finding that he threw the gun away with the intention of altering or concealing it from the police. In support, Crayton asserts that "[his] intent was not to impair the revolver's . . . availability in an official proceeding. [His] intent was to distance himself from the weapon to keep from getting shot and killed by the police.

*Id.*

The *Crayton* court held:

First, the evidence established that the revolver was found within close enough proximity to Crayton's path of flight that he could have reasonably thrown it. Crayton's argument that he tossed the

33

weapon into an open area in "plain sight" does not render the jury's determination clearly unreasonable. The wisdom of a defendant's chosen hiding spot is not dispositive. *See Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky. 1998).

*Id.* at 4. As in *Crayton*, here, the jury's determination is not clearly unreasonable.

Further, *Taylor v. Commonwealth* is similar to this case. 987 S.W.2d 302 (Ky. 1998). There, Taylor argued on appeal that the trial court erred in denying his directed verdict on the charge of tampering with physical evidence. *Id.* at 305. He supported this argument by stating that by placing cocaine under the seat in plain view of the officers, he did not actually conceal the cocaine because the officers knew where the drugs were. *Id.* This Court held that the denial of the directed verdict was not error. *Id.* Further, *Taylor v. Commonwealth* is similar to this case. 987 S.W.2d 302 (Ky. 1998). There, Taylor argued on appeal that the trial court erred in denying his directed verdict on the charge of tampering with physical evidence. *Id.* at 305. He supported this argument by stating that by placing cocaine under the seat in plain view of the officers, he did not actually conceal the cocaine because the officers knew where the drugs were. *Id.* This Court held that the denial of the directed verdict was not error. *Id.* The majority even acknowledges that, in *Taylor*, "we . . . upheld a tampering conviction where the defendant, *while being observed by a police officer*, placed drugs under the seat of a car in which he was sitting." This precedent clearly flies in the face of the majority's new rule—without properly distinguishing its facts or explaining how such a case fits within the framework of the new rule. In short, if the events in *Taylor* could

34

support a tampering conviction under the majority's new rule, so can the facts in the present case.

The majority cites to *Henderson*[84] and *Crayton* as being "not inconsistent" with its new rule. But, neither of those case place any significance on the whereabouts of law enforcement during the action in question. Therefore, the majority's statement that each case is "not inconsistent" with the majority's newly-constructed rule is, at best, disingenuous.

While any member of this Court may believe that tampering with physical evidence charges may sometimes be an exercise in piling on additional charges against a defendant disproportionate to his actions—or bad criminal justice policy—this Court has "long recognized that '[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.'" *Commonwealth v. Grise*, 558 S.W.3d 923, 929 n.28 (Ky. 2018) (quoting *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted)).

"In cases involving statutory interpretations, the duty of the court is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment or discover meanings

---

[84] In *Henderson*, the Court found sufficient evidence for a tampering conviction when Henderson placed money from a crime into his shoe during a police chase. 85 S.W.3d at 619. The majority in the present case determined, that this act was done "outside the presence of officers." In contrast, the *Henderson* opinion simply mentions that it occurred during a car chase but does not describe the exact testimony of what pursuing officers could see. *Id.* at 620. Even so, the actual act of concealment is what the Court relies upon in upholding the conviction, not the lack of an official law enforcement sightline on the defendant. *Id.*

not reasonably ascertainable from the language used." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000). The meaning of KRS 524.100 is explicit: if a defendant believes evidence may be used in a future proceeding and he "conceals" or "removes" said evidence, "with an intent to impair its verity or reliability" he may be charged and convicted of tampering with physical evidence. *Id.* James's actions in this case demonstrate a straightforward example of this crime. James knew he was being pursued by law enforcement, and his actions were designed to conceal or remove evidence by dropping the methamphetamine pipe from his person and into the fray.

It was not clearly unreasonable for the jury to find that James attempted to impair availability of the methamphetamine pipe by dropping it in the alley while being pursued by police. Because I do not endorse the insertion of additional, unrelated language into KRS 524.100 which narrows the breadth and scope of the statute, I respectfully dissent from the majority's opinion regarding KRS 524.100. I would affirm James's tampering conviction.

Lambert and VanMeter, JJ., join.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Andy Beshear
Attorney General

Thomas Allen Van De Rostyne
Assistant Attorney General

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate