Claude Horace HARGRAVE, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Nov. 26, 1986.

Rehearing Denied March 12, 1987.

G. Murray Turner, Mulhall, Turner, Hoffman & Triplett, Louisville, for appellant.

David L. Armstrong, Atty. Gen., Elizabeth Marshall, Asst. Atty. Gen., Frankfort, for appellee.

WHITE, Justice.

This appeal is taken from the Jefferson Circuit Court in which Claude Hargrave was convicted of trafficking in a controlled substance (cocaine) as well as the misdemeanors of possession of marijuana, methaqualone, and methamphetamine. After a hearing in which his status as a persistent felony offender (first degree) was established, his sentence was enhanced to twenty years.

On July 11, 1984, Detective Russell Wilson of the Louisville Police Department gave an affidavit in support of a search warrant in which he affirmed that a reliable confidential informant had told him that "within the past 48 hours he was at 4306 South Third Street, the home of Claude Hargrave, and at this time and at this same address he observed a quantity of marijuana." Based upon this, a search warrant was issued and executed.

No one was on the premises when the officers entered the residence, but a large quantity of cocaine, marijuana, methaqualone, and methamphetamine was found. Somewhat over a week later Appellant presented himself to the police and was arrested.

Prior to trial a hearing was held upon Mr. Hargrave's motion to disclose the identity of the confidential informant or to produce same for an *in camera* hearing. Following its denial a second motion was made and another hearing conducted with the same result. Appellant now argues that the lower Court erred in both instances. Two theories are argued: (1) that the confidential informant was a material witness to the accused's guilt or innocence, a standard set forth in KRS 218A.260, and (2) that there was a substantial preliminary showing that a false statement was made within the affidavit either knowingly or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

With regard to the former, Appellant cites us to *Roviaro v. U.S.*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *Burks v. Commonwealth*, Ky., 471 S.W.2d 298 (1971), in which an informant had witnessed the sale of drugs. Mr. Hargrave reasons that

> If the informant must be produced if he witnesses a disputed sale for which the defendant is charged, logic demands that he be produced if he witnesses a disputed possession with intent to sell.
>
> . . . .
>
> The confidential informant actually observed the criminal act of possession and thus ceased to be merely a source of information. He became a key witness to the guilt or innocence of the accused.

■ Appellant argues that his defense that "he did not possess the drugs in question and was not present when the informant witnessed the possession of the drugs" establishes the materiality of the informant. We cannot agree. "Possession" sufficient to convict under the law need not be actual; "a defendant may be shown to have had constructive possession by establishing that the contraband involved was subject to his dominion or control." *Rupard v. Commonwealth*, Ky., 475 S.W.2d 473, 475 (1972). Examining the affidavit, the informant is never said to have told the detective that he witnessed Mr. Hargrave personally possessing drugs, only that he observed a large quantity of drugs at Appellant's home.

■ Thus, the fact that Mr. Hargrave "was not present when the informant witnessed the possession of the drugs" clearly is *im*material; possession was inferred from the drugs' being present on Appellant's premises, not by the informant's seeing him personally handle them. Likewise,

constructive possession is established, *inter alia*, through dominion and control; such is a matter herein linked primarily to the status of the house, a concern to which the informant could neither add nor detract.

The informant's assertion to Detective Wilson was that he observed a quantity of drugs at a location apparently under the dominion and control of Mr. Hargrave. The fact that Appellant may or may not have been present does not bear upon the effect of this information.

■ On the second prong, that a false statement was included within the affidavit either knowingly or with reckless disregard for the truth, Mr. Hargrave cites us to the testimony of Susan Murphy, one of the witnesses at the first hearing. Ms. Murphy acknowledged that she was the informant; however, she denied having been inside the Hargrave home within 48 hours of the affidavit's being sworn. Putting this in the simplest terms possible, the fact that Ms. Murphy identified herself as a source of information for Detective Wilson does not establish that she was "the" source, *i.e.* the particular informant upon whom the detective relied. At the hearing Detective Wilson confirmed that his informant had told him that he had seen drugs inside the Hargrave home within 48 hours of the time of the affidavit. The fact that Susan Murphy says *she* did not tell him that does not make it any less true.

At the conclusion of the trial on the trafficking and possession charges, the jury returned a verdict finding Mr. Hargrave guilty both of trafficking in and possession of cocaine, this despite the instructions' being presented as trafficking *or* possession. The Circuit Court thereupon merged the lesser offense into the greater and entered judgment as to the trafficking.

Appellant now argues that such was violative of RCr 9.84 which requires that on a guilty verdict the jury fix the degree of the offense and set the penalty. Such, however, presupposes proper preservation of error. At the verdict's return the following exchange occurred:

THE COURT: Well, what I said wouldn't happen, happened, and that is, they've found him guilty of Trafficking and Possession. The Possession can be merged—

MR. DEATRICK [for the Commonwealth]: Yes, sir.

MR. TURNER [for the defendant]: Judge, I would think that just the opposite would be true; that if they found him guilty of the higher offense and the lower offense, that the guilty finding on the lower offense would prevail. I certainly don't see how you can say that that would merge into the higher—

■ Clearly such in no way approached the point now being argued, that the trial court erred to Appellant's substantial prejudice by selecting, *sua sponte*, a verdict for the jury. *See* CR 76.12(4)(c)(iv) requiring "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

In *Franklin v. Commonwealth*, Ky., 490 S.W.2d 148, 151 (1973), under applicably similar facts it was held:

There is no doubt about the verdict insofar as the jury finding the defendant guilty. This court has held through a long line of cases that formal defects in a verdict are waived by the accused's allowing the discharge of the jury without moving the court to recommit the jury for the correction of the verdict. [Citations ommitted.] Since the verdict in this case is only defective as it relates to the punishment to be inflicted and as the right to have the jury fix the punishment in this jurisdiction is procedural, RCA 9.84, we are of the opinion that it can be waived. It is generally held that an accused in a criminal prosecution has the right to object to an insufficient verdict but failure to do so waives any defect in the verdict.

In *Franklin* the jury was instructed that it could return a sentence in the penitentiary *and/or* a fine, and its verdict was returned in the same manner: five years and/or $5,000 fine. The appellate court held that "the verdict as it was rendered by the jury [was] patently unintelligible and

impossible for the trial court to interpret without speculation insofar as the degree and extent of punishment are concerned" and remanded it "to the trial court to fix punishment as if a guilty plea had been entered without regard to the verdict."

▇ Herein there was no such patent unintelligibility. Contrary to its instructions the jury returned guilty verdicts and penalties under two counts, one of which was a lesser included offense of the others. [Defense attorney's assertion notwithstanding, *supra,* the law operates to have the greater absorb the lesser, not the other way around.] Having not been asked to resubmit the matter to the jury, the lower Court by default assumed the sentencing authority. We can find no error in this matter preserved for our review.

▇ Before the Persistent Felony Offender stage started, the Commonwealth successfully moved for an unsigned judgment of a previous felony conviction to be signed by the Jefferson Circuit Court *nunc pro tunc* in order to be used to establish Mr. Hargrave's PFO–1 status. Appellant argues that this was not a clerical mistake in a judgment, correctable under RCr 10.-10, but rather the lack of a judgment itself into which void life could not be subsequently breathed without prejudice to him. No cases are cited in support of this position.

In response we refer Appellant *inter alia* to *Spears v. Commonwealth,* Ky., 462 S.W.2d 931–932 (1971):

Spears [in challenging his enhanced penalty] complains that the order book of the Pulaski Quarterly Court in which the July 1952 judgment was recorded was not signed until the trial for the 1970 violation. The judge of the Pulaski Quarterly Court signed the 1952 order book over the objection of Spears. Spears asserts that this constituted prejudicial error and relies upon *Blanton v. Castle,* Ky., 450 S.W.2d 818 (1970). That case, however, dealt with the procedural effect of nonsignature of a quarterly court order book on the appealability of a judgment recorded therein. *Green v. Commonwealth,* Ky., 413 S.W.2d 329 (1967), is dispositive of the argument of Spears in the aspect in which it is presented. In the Green case we held in a prosecution identical with the one with which we are here concerned that the question is not whether the quarterly court judgment is procedurally perfect. When the judge of the Pulaski Quarterly Court signed the order book the 1952 conviction became valid for all purposes and adequately evidenced the conviction of Spears for the offense recited therein. No question of the judgment's finality is presented. The prosecution proved that it had been appealed and upheld a long time before the present trial.

We can find no distinction within the present case and no cause to depart from the reasoning of *Spears.*

In November 1985 a pretrial hearing was held upon Appellant's motion to suppress certain prior convictions offered for enhancement purposes. We are now told that the lower Court erred in failing to suppress his 1977 conviction for trafficking in a controlled substance (heroin). His present allegation is two-fold: (1) that the record taken at the entry of his guilty plea is silent as to a knowing and voluntary waiver of his Constitutional rights and (2) that it does not establish a factual basis for his plea.

▇ With reference to Point 1, Mr. Hargrave argues that although he responded in the affirmative when asked by the 1977 Circuit Judge, "Are you pleading guilty to trafficking?", he in fact thought he was pleading guilty to possession. Courtroom proceedings are often "swearing matches" between witnesses, with the trier of fact left to determine credibility. Herein, in 1985 the Court was called upon to resolve the conflict within the testimony of Appellant himself. Mr. Hargrave asserted that despite that direct question and answer, he thought—on some unstated basis and with reference to no source of authority whatsoever—that the indictment had been amended to possession. Indeed, according to his 1985 testimony, he went in and out of prison without having once seen any documen-

tation indicating that he was there for trafficking. Claude Hargrave, a man who already had established a record of felony convictions, would have had the lower court believe that it was not until 1985 that he was suddenly struck with the revelation that eight years earlier he had been sentenced and had actually served time under a charge allegedly different from that to which he had thought he had pled. According to the November 1985 transcript, on the one hand he remembers what he pled guilty to and what charge; on the other he denies realizing he had pled guilty to trafficking rather than possession.

Our attention is not, of course, on what occurred subsequently to his 1977 conviction but on what was the state of facts at the time of his guilty plea. Indeed, given the status of the record, there is no merit in continued attention at all to this aspect of the argument on appeal, for the record of the transcript from the November 1985 hearing speaks for itself at pages 36–37:

> MR. TURNER: ... Judge, the only issue in this [motion to suppress the 1977 conviction] is whether or not there is a factual basis established for the plea of guilty. The record reflects that the other questions relating to whether or not he understands his rights appear to be pretty clear.

(We would note that at that November 1985 hearing Mr. Hargrave also acknowledged having been aware of and advised of certain rights in 1977, *e.g.* the right to trial by jury, the right not to testify should there be a trial by jury, and the right to call witnesses on his own behalf.)

■ Turning to "the only issue ... whether or not there is a factual basis established for the plea of guilty," the case to be offered against Appellant was that he had been charged with trafficking based upon possession of twenty bags of heroin. Twenty bags assuredly is a sufficient basis from which trafficking could be inferred. The factual basis was there.

At the conclusion of the Commonwealth's case during the PFO proceeding Mr. Hargrave moved for a directed verdict, asserting that the Commonwealth had failed in its burden of proving an element of the offense, to wit that the prior felony convictions were not concurrent or uninterrupted consecutive terms of imprisonment. Upon an examination of the record we must disagree.

■ In proving the prior felonies the Commonwealth established that Appellant had in 1967 been convicted of two burglary-related charges in Ohio for which concurrent sentences were given. It further proved that in Michigan in 1975, in the federal court system in 1976, and in Kentucky in 1977 Mr. Hargrave was convicted of crimes which were treated as concurrent and uninterrupted consecutive sentences of imprisonment for PFO purposes. Thus, to support a PFO-1 charge the Commonwealth had offered two "sets" of prior felonies from which a jury could conclude that status enhancement was appropriate.

Appellant, however, argues that inasmuch as his 1967 sentence had been for a term of from one to fifteen years, only by inference could it be drawn that such was not an uninterrupted consecutive term with that imposed in 1975, 1976, and 1977. *Hon v. Commonwealth*, Ky., 670 S.W.2d 851 (1984), is cited as authority that an element for a PFO conviction shall not be established through inference.

We do not challenge *Hon;* rather we find that it has not been breached herein. When the Commonwealth established that Mr. Hargrave was convicted of larceny committed in Michigan on or about February 21, 1975, it per force established that he was not simultaneously serving a prison sentence in Ohio. This not only is a matter of common sense; it also is a matter of record evidence.

Appellant's final contention is that despite the fact that the Circuit Court had overruled his motion based upon questioning whether the Michigan term was an uninterrupted consecutive term with that of Ohio, the Court failed in instructing the jury on this, thereby not allowing it to have considered all of his cited convictions as only one, thus defeating a PFO-1 count. It is argued that by not doing same the Court abrogated its duty to instruct upon the whole law of the case.

Mr. Hargrave refers us to *Callison v. Commonwealth*, Ky.App., 706 S.W.2d 434 (1986) [miscited throughout as 434 Ky. 434 (1986)], in which at 436 it states: "Where there is sufficient evidence to support a reasonable inference concerning the ultimate fact in a case, the issue should be submitted to the jury with appropriate instructions [citations ommitted]."

We again note that the Commonwealth established to our satisfaction, and earlier to the Circuit Court's, that for purposes of getting beyond the directed verdict stage, the Michigan and Ohio incarcerations were not an uninterrupted consecutive term. The question thereupon became whether Appellant presented *any* evidence on his own behalf which in any way would have cast doubt upon the Commonwealth's position that the terms did not run concurrently or consecutively.

We have been referred to no place in the record in which Mr. Hargrave created such a jury issue by either direct or inferential proof; consequently that fact established by the Commonwealth stood unrefuted and did not require resolution by a jury. No error is to be found in the instructions.

Accordingly, for all the aforementioned reasons the judgment of the Jefferson Circuit Court is affirmed.

All concur.