James G. CLEMONS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003-SC-001040-MR.

Supreme Court of Kentucky.

Oct. 20, 2005.

As Corrected Nov. 1, 2005.

Mike Moulton, Moulton & Long, PLLC, Elizabethtown, Jeffrey John Otis, Covington, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

The Appellant, James G. Clemons, was convicted of manufacturing methamphet-

amine and trafficking in a controlled substance (methamphetamine) in the first degree, both of which are felonies. He was also convicted of two misdemeanors; namely, possession of marijuana, and possession of drug paraphernalia. Clemons was sentenced to twenty years imprisonment on the manufacturing conviction and ten years on the trafficking conviction, the sentences to run consecutively for a total of thirty years. Two twelve-month sentences were imposed for the misdemeanor convictions which were ordered to run concurrently with the felony sentences. Clemons was also fined $500.00 for each misdemeanor conviction and $1,000.00 for the felony convictions.

■ Clemons appeals to this court as a matter of right. He contends that the Commonwealth's evidence was insufficient to sustain a conviction of manufacturing or trafficking in methamphetamine. These errors are unpreserved. Although Clemons moved for a directed verdict at the close of the Commonwealth's evidence, he did not renew his motion at the close of all the evidence as is required to preserve an insufficiency of evidence claim.[1] He also asserts that the trial court abused its discretion by failing to grant his motion to sever his trial from that of his co-defendant, David Robinson.[2]

■ As noted, Appellant failed to preserve his insufficiency of evidence claims. Our review of these claims will be under RCr 10.26. We conclude that the evidence was sufficient for the jury to convict Appellant of manufacturing and trafficking in methamphetamine.

On August 8, 2001, Deputy Dennis "Sonny" Poteet and other members of the Grayson County Sheriff's Department executed a search warrant at the Appellant's residence, after Samantha Campbell had reported suspected drug activity following a brief visit to the residence the previous evening.

At the time of the offense, KRS 218A.1432 provided that a person was guilty of manufacturing methamphetamine if he knowingly and unlawfully manufactured it or possessed the chemicals or equipment for its manufacture with the intent to manufacture it. In *Kotila v. Commonwealth*,[3] this court construed the language of this statute to require possession of all of the chemicals or all of the equipment necessary to manufacture methamphetamine in the particular method employed. In this case the manufacturing method was the Anhydrous Ammonia method, also known as the "Nazi Method." At the close of its case, the Commonwealth conceded that it had not proven that Appellant possessed all of the necessary chemicals because it offered no proof of Anhydrous Ammonia. Thus, the jury instructions allowed a determination of guilt only with regard to the possession of the necessary equipment, not the necessary chemicals. Evidence of chemicals possessed was offered to prove Appellant's intent to manufacture.

Concerning the equipment, Ms. Jennifer Winnegar, a forensic drug chemist at the Kentucky State Police Crime Lab, testified that the only equipment necessary to manufacture methamphetamine, a controlled

1. *Baker v. Commonwealth,* 973 S.W.2d 54 (1998).

2. Appellant also advances various arguments concerning the firearm enhancement statute. However, although the jury was instructed on firearm enhancement, it rejected the Commonwealth's argument on this point and did

not convict him of using a firearm in the commission of these offenses. Accordingly, Appellant's arguments regarding firearm enhancement are moot.

3. 114 S.W.3d 226 (Ky.2003).

substance, using the "Nazi Method" was a glass jar or container for the Anhydrous Ammonia and Ephedrine. One of the items retrieved from the Appellant's residence and entered into evidence was a glass pickle jar, which Winnegar testified was sufficient equipment. Thus, our inquiry is whether the Commonwealth presented enough additional evidence to permit a reasonable juror to infer that Appellant intended to use the equipment (the jar) in the manufacture of methamphetamine.

The Commonwealth presented evidence of a number of "Nazi Method" items found inside the residence and in a vehicle parked outside the residence, both areas where the jury could find constructive possession by Appellant.[4] Samantha Campbell testified that she had viewed Appellant through the window the night before when she saw many of the items on the table in front of him. Among the items found and admitted into evidence were coffee filters, a turkey baster, a glass jar with a coffee filter on top, a 20 oz. Sprite bottle with a modified cap and hole in the top, liquid fire, salt, a cutting agent, plastic baggies, metal and glass tubes, various baggies containing suspected drug residue, and prescription vials. Officer Poteet also testified that there was a substance in the residence with a strong odor of ether.

Laboratory testing revealed that some of the items contained methamphetamine. For example, the coffee filters contained methamphetamine residue. A twist-tie bag containing 1.88 grams of tan solid was found to contain methamphetamine. Two twist-tie bags containing 1.84 grams of tan solid also tested positive for methamphetamine. Methamphetamine was also found in two prescription vials of brown and white solid.

Furthermore, the Commonwealth presented Samantha Campbell's testimony that she had observed Appellant and others through the window of the residence the night before the search and arrest. She testified that she saw "the liquid fire (drain cleaner) and coke bottles and hoses and the white powdery substance and stuff like that." She also testified that she detected a smell of ether. Ms. Campbell saw one of the individuals smoking a substance in a light bulb, which testimony revealed was a common way of using methamphetamine. She had a brief encounter with Appellant and left. The next morning she made the report which instigated the issuance and execution of the search warrant by Deputy Poteet.

When this evidence is viewed in the light most favorable to the Commonwealth, there was sufficient evidence for a reasonable juror to find Appellant guilty of manufacturing methamphetamine.

Appellant also asserts that there was insufficient evidence to sustain the trafficking conviction. KRS 218A.1431(3) defines traffic as "to distribute, dispense, sell, transfer, or possess with intent to distribute, dispense, or sell methamphetamine." Trafficking in the first degree requires that a person knowingly and unlawfully traffic, *inter alia*, in "a controlled substance that contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."[5]

The Commonwealth presented evidence of several small packages of finished methamphetamine product, empty baggies which could be used for packaging future product and what is known as a "cutting agent," which is used to dilute the substance, increasing quantity. There was

---

4. *See Hargrave v. Commonwealth,* 724 S.W.2d 202 (Ky.1986).

5. KRS 218A.1412(1).

also evidence of a substantial amount of cash ($580.00) found in Appellant's bedroom at the time of the search. Deputy Poteet testified that, as a neighbor of Clemons, he noticed that the Clemons residence received many short-term visitors. As an officer, Deputy Poteet testified that this type of activity was associated with drug trafficking. Considering the testimony and evidence presented in the light most favorable to the Commonwealth, there was sufficient evidence for a reasonable juror to find Appellant guilty of first-degree trafficking.

■ Finally, Appellant asserts that the trial court abused its discretion when it refused to sever his trial from that of his co-defendant, David Robinson. Robinson was living in Clemons' residence at the time and Clemons was not at home when the search warrant was executed. He contends that the joint trial unfairly and unduly prejudiced him because it associated him with his co-defendant's criminal activity.

It is well-established that the trial judge has broad discretionary powers in matters of joinder [6] and that the trial court's decision not to sever the counts "will not be overturned absent a showing of prejudice and clear abuse of discretion." [7] RCr 6.20 permits joinder of defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

In the instant case, the Appellant and his co-defendant were housemates. They were charged with same crimes and both had access to the areas in which the contraband was found. Additionally, Samantha Campbell's testimony specifically identified the Appellant as being inside the residence the previous night during the suspected manufacturing and use of the drugs. Thus, we cannot say that the trial court abused its broad discretion in refusing to grant severance.

Accordingly, the Appellant's convictions and sentences are affirmed.

COOPER, GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

---

**6.** *Rearick v. Commonwealth,* 858 S.W.2d 185, 187 (Ky.1993); *Brown v. Commonwealth,* 458 S.W.2d 444, 447 (Ky.1970).

**7.** *Rearick,* 858 S.W.2d at 187.