RENDERED: AUGUST 2, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0754-MR

DAWAYNE A. DIXON                                         APPELLANT


v.             APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN S. LAPE, JUDGE
ACTION NO. 22-CR-00168


COMMONWEALTH OF KENTUCKY                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND TAYLOR, JUDGES.

ACREE, JUDGE: Dawayne Dixon, Appellant, was convicted in the Kenton Circuit court of possession of a controlled substance in the first degree and resisting arrest. Dixon asserts the circuit court coerced a guilty verdict as a result of giving successive *Allen*[1] charges to the jury. He also argues the evidence did not

---

[1] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

support his conviction and he was therefore entitled to a directed verdict. We disagree with both arguments and affirm.

While driving, Detective Adkisson and Detective Lindeman of the Covington Police Department stopped behind a vehicle driven by Aprille Nicholas. Dixon was the passenger. The detectives noticed something thrown from the passenger side window of the vehicle. They also observed Nicholas and Dixon shoving each other inside the car.

Based on these observations, the detectives activated their lights. Nicholas drove off, initiating a low-speed chase. Before Nicholas finally came to a stop, the detectives noticed two syringes had been thrown from the passenger window. Though they did not see who threw the syringes, Detective Adkisson did observe Dixon reach over to Nicholas during the chase and did not see Nicholas do anything other than drive; Detective Lindeman noticed both Nicholas and Dixon moving around in the car, but mostly noticed Dixon. The detectives were ten to twenty feet behind the car and its rear window was not tinted.

Officers recovered the two syringes and Nicholas and Dixon were arrested. At trial, the parties stipulated the syringes contained methamphetamine.

Dixon was charged with first-degree possession of a controlled substance and, based on other conduct not relevant to this appeal, resisting arrest. The case proceeded to trial. Following the close of the Commonwealth's case in

chief, Dixon moved for a directed verdict. The circuit court denied the motion.

Dixon put on no evidence, and the jury began its deliberations. The jury asked to

rewatch Detective Adkisson's body-worn camera footage and submitted three

questions to the court.

Approximately two hours after beginning deliberations, the jury told

the circuit court that it was deadlocked as to the possession charge. The court

adjourned for the evening, and the next morning the circuit court read the jury the

following *Allen* charge:

> In order to return a verdict each juror must agree thereto.
> Jurors have a duty to consult one another and to deliberate
> with a view toward reaching an agreement if it can be done
> without violence to individual judgment. Each juror must
> decide the case in their own mind but only after an
> impartial consideration of the evidence with the other
> jurors. In the course of deliberations, a juror should not
> hesitate to reexamine their own views and change an
> opinion if the juror is convinced it's erroneous, and no
> juror should surrender their honest conviction as to the
> weight of effect on the evidence solely because of the
> opinion of the other jurors or for the mere purpose of
> returning a verdict. And with those comments I'm going
> to send you back to deliberate.

Video Record (VR) 10/26/22 at 9:06:04-9:06:50.

The jury again resumed deliberations. A mere ten minutes later, the

jury informed the court it would not be able to reach a verdict as to the possession

charge but had reached a verdict on the resisting arrest charge.

-3-

Prior to bringing the jury back into the courtroom, the circuit court judge addressed the parties. She stated that in the short time since resuming deliberations the jury could not have discussed the charges sufficiently. The judge then brought the jury back into the room, told them that she did not believe the jury had carried out the first *Allen* charge, and gave the jury a second *Allen* charge; the second *Allen* charge was a recitation of the first. The jury resumed deliberations and, after approximately forty minutes, returned a guilty verdict.

Dixon now appeals. He raises two issues, both related to his possession conviction. First, he argues the trial court's successive *Allen* charges coerced the jury into reaching a guilty verdict on the possession charge. Second, he argues the circuit court erred in denying his directed verdict motion because the Commonwealth did not prove beyond a reasonable doubt that Dixon possessed the syringes.

As Dixon concedes, the *Allen* charge issue is unpreserved. Under our rules of criminal procedure, if a "palpable error which affects the substantial rights of a party" is unpreserved, our appellate courts may consider the issue on appeal "and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr[2] 10.26. "To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether

---

[2] Kentucky Rules of Criminal Procedure.

the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). Pursuant to RCr 10.26, we elect to review this issue and apply the manifest injustice standard.

At the end of the 19th century, the Supreme Court of the United States affirmed a trial court's instruction to a deadlocked jury which instructed it to continue deliberating. *Allen*, 164 U.S. at 501, 17 S. Ct. at 157. Kentucky codified the *Allen* charge principle by adopting RCr 9.57(1), as follows:

> If a jury reports to a court that it is unable to reach a verdict and the court determines further deliberations may be useful, the court shall not give any instruction regarding the desirability of reaching a verdict other than one which contains only the following elements:
>
> (a) in order to return a verdict, each juror must agree to that verdict;
>
> (b) jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (c) each juror must decide the case, but only after an impartial consideration of the evidence with the other jurors;
>
> (d) in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change his or her opinion if convinced it is erroneous; and
>
> (e) no juror should surrender his or her honest conviction as to the weight or effect of the evidence

-5-

> solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.

RCr 9.57(1). "Prior to the adoption of RCr 9.57, . . . the trial judges of this Commonwealth were afforded substantial discretion as to how to instruct a deadlocked jury, so long as the instruction did not attempt to coerce the jury or indicate the judge's own opinion as to the verdict." *Commonwealth v. Mitchell*, 943 S.W.2d 625, 626 (Ky. 1997) (citations omitted). This discretion has been substantially tempered considering RCr 9.57.

To determine whether an *Allen* charge coerced the jury to reach a verdict, "[o]ur test always has been to look at the language of the statement or instruction itself to determine whether it actually forced an agreement or whether it merely forced deliberations resulting in an agreement." *Mitchell*, 943 S.W.2d at 628 (citations omitted). Therefore, it has long been the rule "that statements which merely impress upon the jury the propriety and importance of coming to an agreement do not rise to the level of reversible error." *Id.* (citations omitted).

In *Wright v. Commonwealth*, the Kentucky Supreme Court rejected an appellant's proposal that the Supreme Court adopt a rule which would rule multiple *Allen* charges as *per se* coercive. 590 S.W.3d 255, 264 (Ky. 2019). Rather, "our appellate courts should address the issue of whether giving multiple *Allen* charges in any given case was coercive, and therefore reversible error, based on the totality of the circumstances surrounding the instructions given." *Id.*

Therefore, the mere fact that multiple *Allen* charges were issued here does not automatically mean the charges were coercive.

The circuit court's first *Allen* charge in *Wright* was remarkably similar to the *Allen* charge at issue in the present appeal. *See id*. at 263. However, when the jury in *Wright* informed the circuit court that it was deadlocked a second time, the court asked the jury foreperson if additional deliberations would be helpful. *Id*. The foreperson answered in the affirmative, the court reread its *Allen* charge, and the jury resumed deliberations. *Id*. When reading its second *Allen* charge, the circuit court stated that "[n]one of us is asking for an arm twisting" and that it was not demanding a certain amount of time for deliberations. *Id*. at 263-64. For these reasons, the Supreme Court determined that the circuit court's statements and the circumstances surrounding them did not demonstrate that the jury had been forced to reach a verdict. *Id*. at 264.

Time is a relevant circumstance to consider when determining whether a jury verdict was coerced. In *Elders v. Commonwealth*, a panel of this Court discussed whether a verdict had been coerced. *See* 395 S.W.3d 495, 503-505 (Ky. App. 2012). In discussing the legal standard for determining whether coercion exists, we noted "[t]he time lapse between the alleged coercive comment and the verdict may be relevant as part of the totality of circumstances, though not decisive." *Id*. at 504 (quoting *Bell v. Commonwealth*, 245 S.W.3d 738, 742-43

(Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008)).

These circumstances present a closer question than those in *Wright*. One distinction is that the jury in the instant case did not inform the circuit court that additional deliberations would be useful. The circuit court provided no assurances that it was not demanding a verdict as were provided in *Wright*; the circuit court did not state explicitly that it was not trying to force a verdict or that the court did not expect the jurors to deliberate for a certain amount of time. Instead, after the first *Allen* charge, the jury returned ten minutes later and informed the court it was still unable to reach a verdict.

However, RCr 9.57(1) permits circuit courts to order further deliberations if the court believes they would be useful, not if the jury believes they would be. Simply, the circuit court did not believe the jury could have carried out the *Allen* charge based on the short period of time between the initial charge and the jury again relaying that it had been deadlocked; therefore, the circuit court obviously believed further deliberations would be useful. And, none of the circuit court's statements to the jury constituted a direct instruction regarding the desirability of reaching a verdict other than those statements permitted under RCr 9.57(1). Otherwise, the circuit court made no statement to the jury regarding the desirability of the verdict. For these reasons, we believe the circuit court's

successive *Allen* charges to the jury was not a shocking or jurisprudentially intolerable defect and, therefore, did not constitute palpable error.

Dixon next argues the circuit court erred in denying his directed verdict motion on his possession charge. The Constitution of the United States requires the government to prove "every element of the charged offense beyond a reasonable doubt" to obtain conviction in criminal cases. *Anderson v. Commonwealth*, 352 S.W.3d 577, 581 (Ky. 2011) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002); KRS[3] 500.070(1)). If this is not done, the accused's right to due process is violated. *Id.* (citing *Winship*, 397 U.S. at 364, 90 S. Ct. at 1072-73).

When considering a motion for directed verdict:

> [T]he trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

---

[3] Kentucky Revised Statutes.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

"A person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses[,]" among other drugs, methamphetamine. KRS 218A.1415(1)(c). A conviction under this statute may be supported by either actual or constructive possession. *Commonwealth v. James*, 586 S.W.3d 717, 721 (Ky. 2019) (citing *Hargrave v. Commonwealth*, 724 S.W.2d 202, 203-04 (Ky. 1986)). Further, "[i]t has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Commonwealth v. Goss*, 428 S.W.3d 619, 625 (Ky. 2014) (citing *Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012)).

When construing all evidence in a light most favorable to the Commonwealth and assuming all of the Commonwealth's evidence is true as required, the circumstantial evidence presented to the jury would allow them to conclude Dixon either actually or constructively possessed the syringes containing methamphetamine. The syringes were thrown from the passenger side of the vehicle, where Dixon sat. Detective Adkisson testified that he observed Dixon

-10-

moving around in the car and reaching over to the driver's side of the car during the low-speed chase. Conversely, he did not see Nicholas do anything but drive the car. Detective Lindeman also observed Dixon's furtive and suspicious movements in the car. The detectives were a mere twenty feet behind Dixon and Nicholas and their view inside the vehicle was not obstructed by window tinting.

Based on this evidence, it would not be clearly unreasonable for a jury to find Dixon guilty of first-degree possession of methamphetamine. Therefore, it was not error for the circuit court to turn the case over to the jury by denying Dixon's directed verdict motion.

Based on the foregoing, we affirm the Kenton Circuit Court's judgment of conviction against Dixon.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Brystin Denguessi Kwin
Assistant Attorney General
Frankfort, Kentucky