RENDERED:  JUNE 26, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0761-MR

KIMBERLY DAWN TUCKER                                             APPELLANT


APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                    HONORABLE BRIAN WIGGINS, JUDGE
ACTION NO. 24-CR-00406


COMMONWEALTH OF KENTUCKY                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, McNEILL, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Kimberly Dawn Tucker ("Tucker") appeals her conviction

and total sentence of three years of imprisonment for one count of possession of a

controlled substance in the first degree ("PCS 1st") and one count of possession of

drug paraphernalia following a jury trial and final sentencing in the Muhlenberg

Circuit Court.

# BACKGROUND

On the evening of December 4, 2024, Officer Rolley, a deputy with the Muhlenberg County Sheriff's Office, along with two Kentucky State Police ("KSP") troopers went to a residence in Muhlenberg County to attempt execution of arrest warrants for Cody Webster ("Webster"). Tucker answered the door and informed the officers that Webster had stayed at the residence but had not been there for some time and was not present. Nevertheless, Tucker consented to the officers' request to search the residence to confirm Webster's absence.

The officers entered the first room, which appeared to be a bedroom, and observed an uncapped syringe on the floor. Two officers continued to conduct a protective sweep while another remained with Tucker. After the officers cleared the residence, they returned to speak with Tucker and requested permission to search for contraband. Again, Tucker consented.

In the bedroom, officers found a cut straw inside a purse. The officers believed that the straw was indicative of drug use and that the purse belonged to Tucker. Under the mattress, officers located another syringe and confronted Tucker, who denied ownership and admitted to only using marijuana. Officers continued their search of the bedroom and retrieved a green plastic container from a desk drawer. Upon opening the container, the officers discovered

a small amount of a crystal-like substance, which they suspected to be methamphetamine.

The officers arrested Tucker and asked if she had any contraband on her person. Tucker replied that she did not and was handcuffed and placed in a police cruiser. On the way to the jail, Trooper Broadbent, the transporting officer, noticed Tucker moving around in the backseat. Tucker said that something was in her boot, but she did not know what it was. Trooper Broadbent pulled over to investigate, and when he opened the rear door, he found a hard eyeglass case in the area where Tucker was sitting. A search of the eyeglass case revealed a metal spoon with suspected methamphetamine residue, capped syringes, cotton swabs, and a metal rod.

The green plastic container, its contents, and one of the seized syringes were submitted to the KSP Western Laboratory for analysis. Only the crystalline substance from the green container underwent forensic examination,[1] which yielded a positive identification for methamphetamine and a net weight of 0.202 grams.

---

[1] At Tucker's jury trial, the KSP forensic chemist who performed the analysis testified to the laboratory's policy of testing a syringe if it was the only item submitted. In the present case, the syringe was not tested.

The grand jury returned an indictment against Tucker, charging her with one count of PCS 1st under KRS[2] 218A.1415, a class D felony, and one count of possession of drug paraphernalia under KRS 218A.500, a class A misdemeanor. The case proceeded to arraignment in circuit court and eventually to a jury trial on May 1, 2025.

The jury trial took all of one day. The Commonwealth presented the testimonies of a KSP forensic chemist, Trooper Broadbent, and Officer Rolley. Tucker did not testify nor call any defense witnesses during the guilt phase, but she testified on her own behalf during the penalty phase. The jury convicted Tucker on all counts and recommended a sentence of three years' imprisonment on the charge of PCS 1st.[3] On May 19, 2025, the circuit court held a final sentencing hearing, at which it denied Tucker's request for a probated or alternative sentence and rendered its judgment in accordance with the jury's verdict and sentencing recommendation. Tucker appealed.

## ANALYSIS

In her direct appeal to this Court, Tucker argues: (1) the circuit court should have granted a mistrial following the prosecutor's reference during voir dire

---

[2] Kentucky Revised Statute.

[3] Following the conclusion of the guilt phase, the parties negotiated a sentence on the misdemeanor charge for possession of drug paraphernalia of six months of imprisonment to run concurrently with the to-be-determined sentence for the felony count.

that Tucker was represented by the Department of Public Advocacy ("DPA"); (2) the circuit court should have directed a verdict of acquittal for the charge of PCS 1st; and (3) the circuit court should have granted a mistrial after the prosecutor implored the jurors to "send a message" to the community during the penalty phase closing arguments. We address each argument in turn and discuss additional facts as needed.

> **A.** **The Circuit Court Did Not Abuse Its Discretion by Declining to Declare a Mistrial Following the Prosecutor's Disclosure in Voir Dire That the DPA Represented Tucker**.

During voir dire, the prosecutor made the following statement: "The Defendant in this action is represented by the [DPA]. The assigned attorneys are [defense counsel] and [co-counsel]. [Defense counsel] formerly had a private practice . . . ." Defense counsel objected, and at the ensuing bench conference, requested a mistrial. The circuit court agreed that the prosecutor's statement "caused an issue" and took a ten minute recess.

Upon returning to the bench, the court requested the parties to approach and reiterated its agreement that the prosecutor's statement was improper. However, the court believed that, after reviewing the case law, the error did not necessitate a mistrial and indicated its intent to admonish the jury, noting defense counsel's objection for the record. The court then proceeded to give the following admonition:

Ladies and gentlemen of the jury, before the court took a break, the Commonwealth's Attorney made a reference to [defense counsel] and his co-counsel as "assigned attorneys for the Defendant." They referenced their employment at the public defender's office. You are to disregard the relationship between the attorneys for the Defendant and the Defendant. You are to set that aside, give that no consideration as you consider the evidence and the status of this case. There's an attorney-client relationship between the Defendant and her attorneys and that is all the consideration that you should give that particular issue, so I'm going to ask and admonish you all to set that aside – any reference to [defense counsel]'s status as a public defender and his co-counsel's status as a public defender. And I am confident that you all will take that admonition seriously – not let it play any role whatsoever in your ultimate determination in this case.

Approximately 20 minutes elapsed between the time of the prosecutor's statement and the court's admonishment. On appeal, Tucker argues that the prejudice resulting from the prosecutor's statement could not be cured by an admonition. Moreover, Tucker claims the circuit court compounded the error by taking a recess and then admonishing the potential jurors, thereby drawing more attention to the issue and cementing it in the jurors' minds.

A mistrial is a drastic measure of last resort and should be granted "only when a fundamental defect in the proceedings has rendered a fair trial manifestly impossible." *Jacobsen v. Commonwealth*, 376 S.W.3d 600, 609 (Ky. 2012) (citing *Parker v. Commonwealth*, 291 S.W.3d 647, 658 (Ky. 2009)). "The standard for reviewing the denial of a mistrial is abuse of discretion." *Graves v.*

*Commonwealth*, 285 S.W.3d 734, 737 (Ky. 2009) (quoting *Bray v.*

*Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002)). An abuse of discretion occurs

when the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported

by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.

1999) (citations omitted).

Our Supreme Court ruled over a decade ago that it did not "believe

there was any identifiable prejudice to Appellant resulting from his attorney being

'unmasked' as a public defender. *There is nothing inherently prejudicial about*

*having an attorney who is a public defender*." *Barnett v. Commonwealth*, 317

S.W.3d 49, 61-62 (Ky. 2010) (emphasis added). Accordingly, we fail to see how

the prosecutor's disclosure of the defense attorneys' employment in public service

prejudiced Tucker in such a way that no viable remedy existed but to declare a

mistrial.

> A mistrial is reserved for unique circumstances in which
> the prejudice is so great that a trial cannot continue fairly
> for both parties. "[T]he power to grant a mistrial ought to
> be used sparingly and only with the utmost caution, under
> urgent circumstances, and for very plain and obvious
> causes."

*Commonwealth v. Padgett*, 563 S.W.3d 639, 646 (Ky. 2018) (alteration in original)

(quoting *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009)).

Here, the circuit court proceeded with the "utmost caution" by

providing the defense with an opportunity to state the grounds for the objection and

identify any prejudice and by taking a recess to research the issue. After returning to the bench, the court rightfully sustained Tucker's objection to the statement and advised the prosecutor to move on to more substantive topics. The court's admonition adequately instructed the jurors to disregard the nature of Tucker's legal representation outside of the standard attorney-client relationship. Following the court's admonition, jury selection proceeded without incident. "A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010) (citation omitted).

### B. The Circuit Court Properly Denied Tucker's Motion for Directed Verdict.

Second, Tucker argues the prosecution did not present sufficient evidence to support a conviction for the charge of PCS 1st, and thus, the circuit court erred by failing to direct a verdict of acquittal as to that count. At the close of the Commonwealth's case-in-chief, Tucker's counsel moved for a directed verdict, arguing that the Commonwealth failed to establish that the methamphetamine in the green container was in Tucker's actual or constructive possession.

In *Commonwealth v. Benham*, our Supreme Court outlined the standard for reviewing a trial court's ruling on a motion for directed verdict as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)). "[T]o survive a motion for a directed verdict, the Commonwealth must produce more than a mere scintilla of substantive evidence." *Jones v. Commonwealth*, 567 S.W.3d 922, 925 (Ky. App. 2019) (citing *Sawhill*, 660 S.W.2d at 5). Finally, a "[c]onviction can be premised on circumstantial evidence of such nature that, based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000) (citing *Howard v. Commonwealth*, 787 S.W.2d 264, 266-67 (Ky. App. 1989)).

In the present case, a review of the evidence presented by the Commonwealth supports the circuit court's determination that a reasonable juror could find Tucker guilty of possessing methamphetamine beyond a reasonable doubt. KRS 218A.1415(1)(c) provides that "[a] person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses: . . . [m]ethamphetamine[.]" Possession may be actual or constructive. *Hargrave v. Commonwealth*, 724 S.W.2d 202, 203-04 (Ky. 1986). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others." *Jones*, 567 S.W.3d at 926 (quoting *Johnson v. Commonwealth*, 90 S.W.3d 39, 42 (Ky. 2002), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010)). Moreover, "[c]onstructive possession, much like actual possession, may be proven by circumstantial evidence." *Haney v. Commonwealth*, 500 S.W.3d 833, 835 (Ky. App. 2016) (citing *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009)).

Tucker claimed that she only used marijuana, and her defense primarily focused on the fact that none of the syringes or other paraphernalia was tested for controlled substances.[4] Without testing to confirm that these items were

---

[4] To this end, Tucker admitted into evidence Officer Rolley's completed KSP form, which listed the two items submitted for forensic testing: (1) the suspected methamphetamine in the green plastic container and (2) "[a] syringe with a cloudy unknown liquid substance inside."

actually used for the ingestion of methamphetamine, Tucker argued the Commonwealth failed to establish a nexus to the methamphetamine seized from the desk drawer. Moreover, Tucker argued that the act of granting consent to search was inconsistent with a person knowingly in possession of an illegal substance.

However, at trial, Trooper Broadbent testified during cross examination that while uncommon, he had in fact encountered situations where suspects voluntarily disclosed the location of contraband. Both Trooper Broadbent and Officer Rolley testified about the progression of discovering the incriminating evidence, including an uncapped syringe in plain view upon entering the bedroom, another syringe under the mattress where Tucker slept, a straw cut at a 45-degree angle in Tucker's purse, the green cannister containing a crystal-like substance in the desk drawer, and the additional syringes, metal rod, cotton balls, and metal spoon inside the eyeglass case recovered from the police cruiser. Both officers provided testimony, based on their training and experience, that these items were consistent with ingesting controlled substances such as methamphetamine.

Officer Rolley identified the cut straw in Tucker's purse and described how it could be used to snort controlled substances, such as methamphetamine. He also informed the jury on the process of converting methamphetamine crystals into a liquid state to enable intravenous injection, noting that metal spoons, cotton balls,

syringes, and lighters were some of the paraphernalia associated with this preparation. These items, Officer Rolley explained, were not used for ingesting marijuana.

Trooper Broadbent and Officer Rolley also testified to marks and bruising on a person's body resulting from intravenous drug use, which they described as "track marks." Officer Rolley stated that he observed such marks and fresh bruising on Tucker's arms, which he opined were consistent with recent drug use. Over objection by defense counsel, Officer Rolley described Tucker as "talkative," "irritated," and "noncompliant," which he associated with using a combination of "uppers and downers," staying awake for several days, or withdrawing from drugs. He stated that he did not experience such irritability from people only using marijuana.

Officer Rolley testified that upon placing Tucker under arrest, she became visibly upset and requested to go to the bathroom. When she stood up, a bulge appeared in the groin area of her pants. The officers warned Tucker of incurring additional charges from introducing contraband into the jail, yet Tucker denied having anything concealed on her person and readjusted her pants. As a female officer was not on scene, the officers did not search Tucker prior to placing her in the police cruiser for transport.

Both officers recounted the details of transporting Tucker to the jail and discovering the eyeglass case with additional paraphernalia in the back of the police cruiser where Tucker sat. Trooper Broadbent testified that he was tasked with transporting Tucker to the jail since his cruiser was equipped with cameras, and after delivering Tucker to the jail for booking, he reviewed the rear camera's footage. He claimed that shortly after placing Tucker into the backseat, the recording showed her remove an object from her pants and hold it in her right hand. According to Trooper Broadbent, this object was the eyeglass case later recovered from the backseat.

Finally, evidence established that Tucker was the lone occupant of the residence on December 4, 2024. The Commonwealth and defense counsel elicited testimony recounting Tucker's statements that she lived at the house for at least one year and that Webster had not been at the residence for a week. Tucker first told officers that Webster stayed in the back bedroom with his girlfriend, then stated that Webster stayed on a makeshift pallet on the floor in Tucker's bedroom. Officer Rolley, however, testified that he searched the entire residence and did not observe any items belonging to Webster and that Tucker changed her story to say that Webster slept on her bedroom floor only after officers discovered contraband.

Considering the "whole" of the evidence, taking it as true, and viewing it in the light most favorable to the Commonwealth, we cannot say that it

was clearly unreasonable for the jury to convict Tucker of PCS 1st. In other words, the Commonwealth presented sufficient evidence for a reasonable juror to conclude that Tucker constructively possessed methamphetamine beyond a reasonable doubt. As this Court held in *Haney*, "[t]his is not an instance of mere proximity, rather it is a situation where the evidence adequately supports the conclusion that [Tucker] knew the items were present and intended exclusive control over them. The circumstantial nature of the evidence renders it no less inculpatory." *Id.* The circuit court did not err by denying Tucker's motion for a directed verdict.

### C. The Circuit Court Did Not Err by Denying Tucker's Motion for Mistrial Following the Prosecutor's Send-a-Message Statement During Penalty Phase Closing Argument.

In her third and final claim of error, Tucker argues the circuit court abused its discretion when it denied defense counsel's second mistrial request after the prosecutor engaged in misconduct by making a send-a-message plea during penalty-phase closing arguments. The prosecutor concluded his closing argument with the following statements:

> I'll leave you with this. . . . If you go in any McDonald's or Dairy Queen in Muhlenberg County there's always a set of folks sitting over in the corner, and they're sitting there talking, eating their breakfast. And a common phrase that you might hear is they'll talk about some of the crimes going on in the county. And you know what those folks, you'll hear them say? They'll say something like: "Boy,

-14-

I sure wish somebody'd do something about this – sure wish somebody'd do something about all these drugs." Today, something can be done. Today, you have the opportunity to send a message, and I'm gonna ask you to send a message to the community of three years in the penitentiary for the defendant.

Tucker's defense counsel objected. At the bench conference, the circuit court sustained the objection but declined to declare a mistrial, instead indicating that it would admonish the jurors.

"We reverse for prosecutorial misconduct in a closing argument only if the misconduct is 'flagrant' *or if each of the following are satisfied*: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with sufficient admonishment." *Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky. 2009) (quoting *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002)). As previously described, Tucker's defense counsel immediately objected, and the circuit court sustained the objection. Nevertheless, Tucker maintains that evidence of Tucker's guilt was not overwhelming, and the court's admonition was insufficient to cure the error. We disagree.

First, as to the evidence against Tucker, the jury had already rendered its guilty verdicts against Tucker and heard additional evidence during the penalty phase by the time the prosecutor uttered "send a message." As previously

-15-

discussed, the Commonwealth presented sufficient evidence during the guilt phase to support the verdict.

During the penalty phase, the Commonwealth presented two witnesses: the clerk of court and a probation officer. Those testimonies revealed Tucker's criminal history, including two prior PCS 1st convictions, and several instances of violating conditions of probation and parole. Tucker herself took the witness stand at this stage to present mitigation, but when her own counsel asked if she would seek help for substance abuse, she declared "Not when I only smoke pot . . . and if things had been brought out right, they would've known that . . . so I'll do what I gotta do."

Second, the circuit court immediately admonished the jury after the bench conference regarding the prosecutor's send-a-message remark. The admonition went as follows:

> I will admonish you that, it is the situation under the rules of procedure that are in place here in the Commonwealth – your deliberations should not involve "sending a message to the community." You've heard that phrase utilized by the prosecutor. You have been asked to make findings of fact to this particular case with regard to that particular defendant [referring to Tucker] that imposes a penalty of one to three years, based upon the evidence that was presented to you during the first portion of this trial as well as this, the guilt phase of trial. Determine a penalty that you believe is appropriate for Ms. Tucker.

We incorporate the standard of review for abuse of discretion and legal analysis regarding admonitions set forth above in our discussion of "unmasking" defense counsel as public defenders, as they govern the issue here as well. Our Supreme Court in *Cantrell v. Commonwealth*, discussed a line of cases analyzing iterations of send-a-message arguments and noted those "cases illustrate that so long as the jury is well aware that it is sentencing the particular defendant before it . . . on the crime for which . . . she has been convicted, there is no prejudice in the prosecutor commenting on the deterrent effect of that sentence." 288 S.W.3d 291, 299 (Ky. 2009). While the prosecutor's statements herein veered from a "deterrent effect" and toward the prohibited "effort . . . to shame jurors or attempt to put community pressure on jurors' decisions," *id.*, the court's admonition effectively directed the jurors to focus on sentencing Tucker based solely on the evidence presented before them. In short, the court's admonishment to the jury was clear, direct, and sufficient to cure the prosecutor's error.

## CONCLUSION

Having reviewed the record and the parties' arguments, we find no error in the circuit court's rulings. Therefore, the judgment of the Muhlenberg Circuit Court is AFFIRMED.

ALL CONCUR.

-17-

BRIEF FOR APPELLANT:

Jennifer E. Hubbard
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph Crawford White
Assistant Solicitor General
Frankfort, Kentucky